No. 22        June 13, 2024        489

## IN THE SUPREME COURT OF THE STATE OF OREGON

STATE OF OREGON,
*Respondent on Review,*

*v.*

TASI AUTELE,
aka Brian Mulivai Autele,
aka Tasi Mulivai Autele,
*Petitioner on Review.*

(CC 17CR69755) (CA A172873) (SC S070046)

En Banc

On review from the Court of Appeals.*

Argued and submitted March 7, 2024, at University of Oregon School of Law, Eugene, Oregon.

Christopher A. Perdue, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Ernest Lannet, Chief Deputy Defender, Office of Public Defense Services, Salem, argued the cause and filed the briefs for petitioner on review.

BUSHONG, J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for a new trial.

_____

\* Appeal from Washington County Circuit Court, Ricardo J. Menchaca, Judge. 323 Or App 594 (2023) (nonprecedential memorandum opinion).

**BUSHONG, J.**

This criminal case implicates a fundamental right protected by the Oregon and federal constitutions—the right to counsel—but our resolution of this case turns on the lack of an adequate record demonstrating that the trial court had discretion to deny defendant's request to be represented by the attorneys that he had retained. The Court of Appeals concluded that the record was insufficient for it to determine whether the trial court had abused its discretion, and, based on that conclusion, affirmed defendant's conviction because it "[was] not in a position in which [it] [could] say" that the trial court had erred. *State v. Autele*, 323 Or App 594, 597 (2023) (nonprecedential memorandum opinion).

We allowed review and now reverse. We agree with the Court of Appeals' assessment that the record in this case was inadequate, but we conclude that a trial court's discretionary decision to deny a defendant's request to be represented by retained counsel of their choice may be affirmed on appeal only if the record created by the trial court establishes that its exercise of discretion was permissible. Because the record in this case does not do so, we reverse and remand for a new trial.

## I.  BACKGROUND

### A.  *Trial Court Proceedings*

Defendant retained attorneys Mackeson and Hall to represent him after he was indicted on charges of second-degree assault and strangulation. At defendant's request on the morning of his first trial date, the trial was delayed so that defense counsel could investigate photographs that had been anonymously left at Hall's office the previous day. On the next date set for trial, defendant sought to exclude the photographs on grounds that they were subject to an ongoing criminal investigation regarding their authenticity. The trial court initially granted defendant's motion, but, when pressed by the prosecutor, the court indicated that the state might be able to use the photographs in cross-examining defendant.

The prosecutor then expressed concerns about defense counsel's ethical obligations if defendant were to be

confronted with those photographs on the stand. That led to an off-the-record discussion in chambers. When they went back on the record, the court provided the following summary of that discussion:

> "I *** met with the attorneys in chambers, with Mr. Gerhard, Mr. Mackeson and Mr. Hall. It's my understanding that Mr. Mackeson [and Mr. Hall] at this point [have] a conflict with—[they have] requested to withdraw. I don't know that it's appropriate for me to go into the conflict, but [they have] motioned the court for a withdrawal. Based on [their] ethical conflict, I'm going to allow the withdrawal. The State opposed that based primarily on the age of the case. It's a 2017 case. But based on my understanding of the conflict, I don't know that I have a choice. So I will reluctantly grant the withdrawal."

Defense counsel did not submit a written motion to withdraw, and the court did not identify on the record the precise ethical issue that led to defense counsel's request. The court told defendant that it would give him some time to retain another lawyer, and, if that effort was unsuccessful, the court would appoint counsel to represent him. The court set a status hearing nine days later.

At that hearing, Mackeson and Hall appeared with defendant and asked, on defendant's behalf, that they be allowed to represent defendant, which led to another off-the-record discussion in chambers. When they went back on the record, counsel did not state whether or how the conflict that they had previously raised had been resolved, but they did ask the court to put defendant's request on the record:

> "[DEFENSE COUNSEL]:   Judge, I think I'd like the record to reflect that in chambers, we made the request to be permitted to represent [defendant]. I know the Court's going to address that—at least I think—that request. And then, otherwise, I have [defendant's] file."

The state did not object on the record to Mackeson and Hall's request to represent defendant, and the court did not inquire further on the record or receive any evidence or other information about a conflict or potential conflict. The court denied the request with the following explanation:

"THE COURT:    Okay. I met with the attorneys in chambers the last time we were in open court. The exact date escapes me. I want to say it was two weeks ago. Correct me if I'm wrong, both of you. At that point in time, without getting into specifics, I—[defense counsel] had made a motion in my office and—and we put it on the record to withdraw based on some ethical considerations, which, in my mind and in his at the time, were significant. And so I withdrew [defense counsel] and set over the trial of this very old case. I directed [defendant] to be here today with new counsel or I would appoint counsel. I met with the attorneys in my office just a few moments ago and Mr. Mackeson and Mr. Hall asked to be reappointed.[1]

"The conflict may or may not have resolved itself, but, in my mind, the Court's mind, my concerns about the ethical obligations that were raised in the last hearing we had, I'm just not willing to reappoint Mr. Mackeson or Mr. Hall to represent [defendant]."

The court then appointed counsel for defendant and set another status hearing. Defendant later retained a different lawyer, who represented him for the remainder of the case. The disputed photographs were not used at trial, and the jury found defendant guilty of third-degree assault, a lesser-included offense. Defendant appealed, contending that the trial court had wrongly denied him his constitutional right to be represented by counsel of his choice.

B.  *Appellate Proceedings*

On appeal, defendant argued that, because there was no evidence of an existing conflict of interest that would have delayed or disrupted the trial, the trial court erred by interfering with defendant's choice of retained counsel. The state responded that defendant had failed to make a record adequate for appellate review of that issue. The Court of Appeals agreed with the state and affirmed the conviction, explaining that it could not say whether the trial court had erred:

---

[1] By stating that Mackeson and Hall had requested to be "reappointed," the court either misspoke or misunderstood the nature of their requested representation. It is undisputed that Mackeson and Hall had been retained by defendant; they had not been "appointed" by the court and were not asking to be "reappointed."

"We are faced with a situation in which we do not have the information on which the trial court based its decision. The court stated that it believed defense counsel's conflict of interest was significant and indicated that it also believed that it presented a risk that defense counsel would again have to withdraw. Also, from the record that was made, we can discern that the conflict was one that would arise, if at all, during the trial. If that happened, it would be a 'disruption of the orderly processes of justice.' *Without further information about the nature of the conflict or whether the risk of the conflict arising during trial had been resolved, we are not in a position in which we can say that the trial court erred under the circumstances of this case.*"

*Autele*, 323 Or App at 596-97 (emphasis added). Given the importance of a criminal defendant's constitutional right to counsel, we allowed review.

## II.   DISCUSSION

### A.   *The Parties' Contentions*

The parties agree on several predicate issues. The state does not dispute defendant's contention that his constitutional right to counsel includes the right to be represented by retained counsel of choice under both Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution. And defendant does not dispute the state's contention that his right may be overcome if allowing the requested representation would unduly delay or disrupt the trial court proceedings or violate ethical or professional standards of conduct.

However, the parties disagree about the application of those principles in this case. Defendant contends that a trial court must do more than allude to general concerns about unspecified ethical obligations to overcome his constitutional right to be represented by retained counsel of his choice. And the state contends, as it did in the Court of Appeals, that defendant's failure to develop a record that is adequate for review requires this court to affirm. Alternatively, the state contends that the trial court properly declined to permit Mackeson and Hall to represent defendant after they withdrew based on an ethical conflict that the trial court described as "significant."

We begin our discussion with the constitutional right to counsel that is implicated in this case because that context informs our analysis of the record and the appropriate disposition of this case.

## B.  *Defendant's Constitutional Right to Counsel*

As noted above, the parties do not dispute that a criminal defendant's constitutional right to counsel includes the right to be represented by counsel of their choice. That important right is well-established under the Sixth Amendment to the United States Constitution.[2] *United States v. Gonzalez-Lopez,* 548 US 140, 144, 126 S Ct 2557, 165 L Ed 2d 409 (2006) (stating that "an element of [the Sixth Amendment right to counsel] is the right of a defendant who does not require appointed counsel to choose who will represent him"); *see also Wheat v. United States*, 486 US 153, 158-59, 108 S Ct 1692, 100 L Ed 2d 140 (1988) (noting that the Sixth Amendment "secures the right to the assistance of counsel, by appointment if necessary" and that the right may include "the right to select and be represented by one's preferred attorney"); *Powell v. Alabama*, 287 US 45, 69, 53 S Ct 55, 77 L Ed 158 (1932) (stating that it would violate the Sixth Amendment and "due process in the constitutional sense" if a court "were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him").

Whether the same right also exists under the parallel provision of the Oregon Constitution—Article I, section 11—has not been as clearly established.[3] Accordingly, defendant suggests that we could decide this case based on the Sixth Amendment without addressing Article I, section 11.

---

[2] The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right *** to have the Assistance of Counsel for his defense."

[3] Article I, section 11, provides: "In all criminal prosecutions, the accused shall have the right *** to be heard by himself and counsel[.]" The Article I, section 11, right to counsel includes the right to court-appointed counsel, *see State v. Smith*, 339 Or 515, 526, 123 P3d 261 (2005), but it does not include "the right to court-appointed counsel 'of the defendant's own choosing.'" *State v. Stanton*, 369 Or 707, 715, 511 P3d 1 (2022) (quoting *State v. Langley*, 351 Or 652, 664, 273 P3d 901 (2012)). Thus, a trial court "is not required to appoint a substitute lawyer for a defendant in the absence of a legitimate complaint concerning the one already appointed for him." *Stanton*, 369 Or at 715 (quotations omitted). But we have not squarely addressed whether a defendant's Article I, section 11, right to counsel includes a right to be represented by retained counsel of choice.

However, defendant fully briefed the issue under Article I, section 11, and, as noted above, the state does not dispute that Article I, section 11, also protects a criminal defendant's right to retained counsel of choice. We ordinarily address state constitutional issues before turning to the federal constitution, *see State v. Babson*, 355 Or 383, 393, 326 P3d 559 (2014) (applying that principle), and we adhere to that approach in this case. As explained below, we conclude that Article I, section 11, like the Sixth Amendment, protects a criminal defendant's right to be represented by retained counsel of choice, and we further conclude that the Article I, section 11 right, like the Sixth Amendment right, may be overcome by other considerations, including the need to avoid undue delay or disruption of the trial or violation of ethical and professional standards.

Article I, section 11, was part of the original Oregon Constitution. When construing such a provision, we examine the text of the provision in its context, the historical circumstances surrounding its adoption, and the case law that has construed it. *Priest v. Pearce*, 314 Or 411, 415-16, 840 P2d 65 (1992). Our goal is "to identify, in light of the meaning understood by the framers, relevant underlying principles that may inform our application of the constitutional text to modern circumstances." *State v. Davis*, 350 Or 440, 446, 256 P3d 1075 (2011).

Employing that analysis in *Davis*, we concluded that law enforcement officers did not violate the defendant's Article I, section 11, right to counsel when they elicited incriminating statements from the defendant before he had been arrested or charged with a criminal offense. Although *Davis* dealt with a different issue—namely, at what point in a criminal proceeding the right to counsel attaches—its analysis of Article I, section 11, is instructive. The text of that provision—which states that, in criminal prosecutions, the accused "shall have the right *** to be heard by *** counsel"—certainly suggests that, if the accused has the means to retain a lawyer, the accused's right "to be heard by *** counsel" includes the right to be represented by the lawyer that they chose to retain. Our historical analysis in *Davis* of the right to counsel under the Sixth Amendment and the state constitutional counterparts that existed when the

Oregon Constitution was adopted support that conclusion. There, we noted that there was "general agreement among historians" that those provisions were originally understood "as a guarantee only of the right to *retained* counsel." 350 Or at 467 (emphasis in original). Although that right was later expanded under both the Sixth Amendment and Article I, section 11, to include a right to court-appointed counsel, *see, e.g.*, *Gideon v. Wainwright*, 372 US 335, 339-40, 83 S Ct 792, 9 L Ed 2d 799 (1963); *State v. Smith*, 339 Or 515, 526, 123 P3d 261 (2005), the original understanding of the scope of that right certainly supports the conclusion that a defendant's Article I, section 11, right to counsel includes the right to be represented by retained counsel of choice.

The case law also supports that conclusion. As noted above, the United States Supreme Court has interpreted the Sixth Amendment to include the right to be represented by retained counsel of choice, and this court has suggested that the same is also true under Article I, section 11. *See State v. Delaney*, 221 Or 620, 639, 332 P2d 71 (1958) (stating that the Article I, section 11, right to counsel went "no further than to assure the defendant that he may be heard by himself *and the counsel which he chose to employ*" (emphasis added)). Accordingly, we conclude that a criminal defendant's Article I, section 11, right to counsel includes the right to be represented by retained counsel of choice.

We have also recognized, however, that a defendant's Article I, section 11, rights may be overcome by other considerations. For example, in *State v. Rogers*, 330 Or 282, 301, 4 P3d 1261 (2000), we indicated that a defendant's Article I, section 11, right to be heard "by himself" may be overcome by the court's responsibility to conduct a trial in an orderly and expeditious manner:

> "[A] trial court is obliged to accommodate the exercise of all pertinent constitutional and statutory rights by all parties within the context of an orderly and expeditious trial. Nothing in the text of Article I, section 11, suggests that the framers intended that a defendant's right to be heard 'by himself' should override the court's authority and responsibility to conduct the trial as an orderly and expeditious proceeding. The historical circumstances and case law surrounding Article I, section 11, support that reading."

*Id*. at 301; *see also State v. Hightower*, 361 Or 412, 417-18, 393 P3d 224 (2017) (stating that "a number of interests" can overcome a defendant's Article I, section 11, rights, including "the trial court's overriding obligation to ensure the fairness and integrity of the trial and its inherent authority to conduct proceedings in and orderly and expeditious manner").

In that respect, Article I, section 11, also parallels the Sixth Amendment. The Supreme Court has stated that a criminal defendant's Sixth Amendment right to be represented by retained counsel of their choice "is circumscribed in several important respects." *Wheat*, 486 US at 159. Among them, standards of professional ethics and conduct can be a basis for overcoming a defendant's Sixth Amendment right to retained counsel of choice.

For example, the defendant in *Wheat* had asked the trial court to allow a substitution of counsel so that he could be represented by an attorney who was also representing two codefendants. Although the defendant attempted to waive any ethical conflict, the trial court refused to accept the waiver and the defendant was convicted. The Supreme Court affirmed the conviction, stating that a trial court, "confronted with and alerted to possible conflicts of interest[,] must take adequate steps to ascertain whether the conflicts warrant separate counsel." *Id.* at 160. The Court explained that the Sixth Amendment's "presumption in favor of counsel of choice" may be overcome by a court's "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession[.]" *Id*. The Court further explained that a trial court "must be allowed substantial latitude" in refusing a conflict waiver where an actual or potential conflict exists, *id.* at 163, concluding that, "where a court justifiably finds an actual conflict of interest, there can be no doubt that it may decline a proffer of waiver, and insist that defendants be separately represented." *Id.* at 162.

The Supreme Court also explained how ethical considerations may overcome a defendant's right to be represented by retained counsel of choice in *Gonzalez-Lopez*. There, the trial court had denied a request by the defendant's retained attorney to be admitted *pro hac vice* because

the attorney had violated a rule of professional conduct.[4] In accepting the government's concession that the defendant had been denied his right to counsel of choice and concluding that harmless error analysis did not apply in that context, the Court acknowledged that a trial court has "an 'independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them.'" 548 US at 152 (quoting *Wheat*, 486 US at 160). The Court further observed that trial courts have "wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar[.]" *Id.* (internal citation omitted).[5]

Because we conclude that defendant's right to counsel of choice under Article I, section 11, reflects the same fundamental interests protected by the Sixth Amendment, we likewise conclude that that right may be overcome by the same general considerations that can override a criminal defendant's Sixth Amendment right.[6] As a result, trial courts have some discretion under Article I, section 11, in assessing whether defendant's right to be represented by retained counsel of choice is outweighed by ethical requirements or the potential for unduly delaying or disrupting the trial.

---

[4] An attorney who is a member of the bar in one state may be admitted *pro hac vice* to appear in court in another state on a particular matter. In *Gonzales-Lopez*, the defendant retained a California lawyer to represent him on criminal charges in Missouri. The district court denied the attorney's request for admission *pro hac vice* stating that, by passing notes to co-counsel, the attorney "had violated a court rule restricting the cross-examination of a witness to one counsel." 548 US at 142.

[5] The Court ultimately concluded that "[n]one of [those] limitations on the right to choose one's counsel [were] relevant" in *Gonzales-Lopez* because the government had conceded the constitutional violation and a violation of the defendant's Sixth Amendment right to counsel of choice "is not subject to harmless-error analysis." 548 US at 152.

[6] By reaching that conclusion, we are not suggesting that we must follow the Supreme Court's interpretation of the Sixth Amendment when we interpret Article I, section 11. We have interpreted those rights differently in other contexts. *See State v. Prieto-Rubio*, 359 Or 16, 26-37, 376 P3d 255 (2016) (discussing how the Article I, section 11, right to counsel in the context of police questioning differs from the Supreme Court's interpretation of the Sixth Amendment right in *Texas v. Cobb*, 532 US 162, 168-72, 121 S Ct 1335, 149 L Ed 2d 321 (2001)); *State v. Savinsky*, 364 Or 802, 814, 441 P3d 557 (2019) (noting that *Prieto-Rubio* "endors[ed] the conclusion and reasoning of the *Cobb* dissent").

Defendant contends, however, that, for his conviction to be affirmed on appeal, the record must affirmatively demonstrate that the trial court assessed the relevant considerations and made a decision that was within the permissible range of its discretion. Because the record does not demonstrate that in this case, defendant contends that his conviction must be reversed. As explained below, we agree with defendant.

C. *The Trial Court's Obligation to Make an Adequate Record*

We have not previously addressed the extent to which a trial court has an obligation to make an adequate record supporting its decision to deny a defendant's request to be represented by retained counsel of choice. But we have addressed the trial court's record-making obligations in denying a defendant's request to waive counsel and exercise their right of self-representation. Because we have recognized that the right to be represented by counsel is "the counterpart" to the right of self-representation, *Hightower*, 361 Or at 416; *see also Rogers*, 330 Or at 297 (noting that Article I, section 11, establishes the right to self-representation "in conjunction with the right to be heard by counsel"), our analysis of the consequences of a trial court's failure to make an adequate record in connection with a defendant's waiver of the right to counsel is informative.[7] In that context, our cases clearly establish that, where the record is insufficient to show that a defendant knowingly and intentionally waived their right to counsel, thereby exercising their right to self-representation, a defendant's conviction must be reversed.

For example, in *State v. Langley*, 351 Or 652, 665, 273 P3d 901 (2012), we explained: "Because courts are reluctant to find that a defendant has waived fundamental constitutional rights, we will not presume a waiver of

_____

[7] We have explained that the Article I, section 11, right to "to be heard" by oneself "includes the right to self-representation." *Hightower*, 361 Or at 416. Thus, a defendant may waive his right to counsel. *State v. Meyrick*, 313 Or 125, 131, 831 P2d 666 (1992). By waiving the right to counsel, "a defendant necessarily asserts the right to self-representation." *Hightower*, 361 Or at 417. Conversely, "by asserting the right to counsel, a defendant waives the right to self-representation." *Id.*

the right to counsel from a silent record." *See also State v. Meyrick*, 313 Or 125, 132, 831 P2d 666 (1992) (a valid waiver of the right to counsel "will not be presumed from a silent record"); *State v. Stanton*, 369 Or 707, 716, 511 P3d 1 (2022) (same). In that context, we have indicated that "courts should strive to demonstrate on the record that a defendant understands the implications of the waiver." *Meyrick*, 313 Or at 133 n 9.

Although this case does not involve a waiver of the constitutional right to counsel or a request to exercise the right of self-representation, our decisions in *Stanton* and *Hightower* nonetheless inform our conclusion that the burden to make a record is on the court exercising discretion to deny retained counsel of choice, rather than on unrepresented defendants. The defendant in *Stanton* had been represented by several different court-appointed lawyers after he was charged with multiple felonies. During trial, there were three motions involving the representation of defendant pending at the same time: (1) defendant's motion for substitute counsel on the ground that his lawyer was not providing adequate representation; (2) the lawyer's request to withdraw on the ground that she could not continue to represent the defendant under the Rules of Professional Conduct; and (3) the prosecutor's assertion that defendant had waived his right to counsel through misconduct. The trial court did not address any of those motions expressly, instead proceeding "as if [the] defendant's only options were to continue with [his current] court-appointed counsel or go without court-appointed counsel." 369 Or at 719. The defendant opted to proceed without counsel for the remainder of the trial. He was convicted and sentenced to a lengthy prison sentence.

We reversed and remanded for a new trial. We explained that "the record [was] not clear as to why the trial court allowed the trial to proceed without counsel for [the] defendant." 369 Or at 722. On the record before it, the trial court "could not conclude that [the] defendant [had] waived his right to counsel, either impliedly or expressly." *Id.* Ultimately, we concluded that, "[b]ecause the record does not establish that [the] defendant made an intentional and

knowing waiver of his right to counsel, and because we can-
not determine what the outcome of the case would have been
had [the] defendant been represented by counsel, we must
remand this case for a new trial." *Id.* at 723.

        In *Hightower*, the defendant attempted to waive his
right to counsel and begin representing himself in the mid-
dle of trial. The trial court denied that request, concluding
as a matter of law that the defendant could not invoke the
right to self-representation after the trial had commenced.
We reversed. We acknowledged that the trial court had some
discretion in deciding whether to accept the defendant's
waiver, but concluded that "the record must include some
indication of how the trial court actually weighed the rele-
vant competing interests for an appellate court to be able to
determine whether the trial court abused its discretion[.]"
361 Or at 421. We explained that express findings are not
required, "so long as the record reveals the reasons for the
trial court's actions." *Id.* at 421 (citing *State v. Guzek*, 358 Or
251, 269, 363 P3d 480 (2015)).

        But it was not sufficient, we emphasized, "that an
appellate court may be able to speculate about what *might*
have been the trial court's rationale for its decision." 361 Or
at 421 (emphasis in original). And we rejected the state's
argument that the trial court "reasonably could have deter-
mined that the interest in [an] orderly and expeditious
trial outweighed any prejudice to defendant's right to self-
representation." *Id.* at 422. The applicable test, we explained,
"is not whether the court reasonably could have made that
determination. The test is whether the record reflects that
the trial court's actual decision amounted to a reasonable
exercise of its discretion." *Id.*

        Applying *Stanton* and *Hightower* in this case sug-
gests that, because the record does not demonstrate that the
court's decision to deny defendant's constitutional right to be
represented by retained counsel of choice was a permissible
exercise of its discretion, the appropriate result is to reverse
and remand for a new trial. The state protests, arguing that,
under the general principle that a party asserting error has
the burden to make a record demonstrating the error, the

appropriate result is to affirm.[8] But that principle does not apply to every claimed error in a criminal case.

As discussed above, the general principle that the party asserting error has the burden to make a record showing that the trial court erred does not apply where the claimed error is the trial court's acceptance of a defendant's waiver of the right to counsel, as in *Stanton*, or the trial court's refusal to allow a defendant to represent himself, as in *Hightower*. A defendant claiming that a trial court erred in those contexts is entitled to a reversal and remand for a new trial if the record does not support the trial court's exercise of discretion.

In addition, we have recognized in other contexts that trial courts have an affirmative obligation to create a record supporting a discretionary decision affecting a defendant's rights at trial. For example, although we have "long recognized the right of a criminal defendant to appear free of physical restraints during a jury trial," *State v. Washington*, 355 Or 612, 627, 330 P3d 596 (2014) (quoting *State v. Bowen*, 340 Or 487, 495, 135 P3d 272 (2006), *cert den*, 549 US 1214 (2007)), that right is subject to some limitations. Thus, a trial court "has discretion to order physical restraint of a defendant if there is sufficient evidence of a substantial risk of dangerous or disruptive behavior[.]" *Washington*, 355 Or at 628. When that occurs, evidence of that risk "should be placed on the record in a hearing for that purpose." *Id.* After hearing such evidence, "the trial court must make a record of its factual findings and reasoning in support of its order." *Id.* The purpose of making those findings on the record "is to facilitate appellate review." *Guzek*, 358 Or at 268. As we have explained, appellate review "is better facilitated by a record of findings that is direct, express, and clearly delineated." *Id.* at 269. In that context, "the standard for determining error in the sufficiency of the judicial record is a functional

---

[8] In one of the cases on which the state relies, *State v. Bowen*, 340 Or 487, 135 P3d 272 (2006), *cert den*, 549 US 1214 (2007), we declined to address a defendant's claim that the trial court had erred in excluding testimony because defendant had failed to make an offer of proof of the testimony he expected to elicit. There, we affirmed the conviction, explaining that "[w]ithout an offer of proof *** [the] defendant failed to make an adequate record for this court to review." *Id.* at 501.

one—namely, whether the record reveals the findings and reasoning for the court's actions." *Id.*

Additionally, we held in *State v. Lutz*, 306 Or 499, 760 P2d 249 (1988), that the trial court's failure to make a record that the defendant had consented to finishing his criminal trial with eleven jurors after the court excused a juror who had become ill required reversing the defendant's conviction. Although the defendant did not object at the time, the Court of Appeals reversed his conviction, concluding that the defendant's consent to continuing with fewer than twelve jurors must be stated affirmatively on the record. We agreed, explaining that the trial court's decision to discharge a juror and proceed with the remaining eleven jurors "are matters of importance bearing on the conduct of a trial." *Id.* at 503. We concluded that proceeding "without [the] defendant's consent on the record was reversible error." *Id.* Accordingly, we held that the Court of Appeals "correctly vacated [the] defendant's conviction." *Id.*

We further held in *Lutz* that the Court of Appeals had erred in remanding to the trial court to determine whether the defendant had consented "off the record" to continuing the trial with only eleven jurors. We explained: "A criminal trial should be conducted on the record. The trial courts of this state are courts of record and nothing of importance bearing on the conduct of the trial should be 'off the record.'" *Id.*; *see also State v. Williams*, 322 Or 620, 624 n 7, 912 P2d 364 (1996) ("Discussion off the record of matters as to which issues on appeal could arise is ill-advised, either because no official record is made of the matters or because whatever record that is made often is summary in nature."). Dismissing a juror and continuing a trial with the remaining eleven jurors "are matters of such importance" that the "[f]ailure to show [the defendant's consent] on the record" may not be cured by a remand. *Lutz*, 306 Or at 503. Instead, we concluded, the defendant was entitled to a new trial.

When a trial court declines to accommodate a criminal defendant's constitutional right to be represented at trial by their retained counsel of choice, that decision affects an important constitutional right bearing on how

trial is conducted. We should not presume from a silent or inadequate record that a trial court did not err in denying a defendant's request to be represented by retained counsel of choice, just as we would not presume from a silent or inadequate record that a trial court did not err in finding that a defendant had waived his right to be represented by counsel. The trial court is in the best position to make a record that shows why it determined that overcoming a defendant's Article I, section 11, right to be represented by retained counsel of choice was a permissible exercise of its discretion. Accordingly, we conclude that, when a trial court denies a criminal defendant's request to be represented by retained counsel of their choice, the record must demonstrate that the trial court's decision was a permissible exercise of its discretion.

D.   *The Record in this Case*

The record in this case reveals that: (1) defendant retained attorneys Mackeson and Hall to represent him after he was indicted on criminal charges; (2) on the first scheduled trial date, the court granted defense counsel's request to postpone the trial so that they could investigate photographs that had been anonymously delivered to Hall's office; (3) on the next scheduled trial date, the trial court granted defense counsel's request to withdraw due to an ethical conflict that would likely arise from the prosecutor's plan to cross-examine defendant about those photographs; (4) nine days later, at the next court appearance, the same attorneys appeared and asked to be allowed to represent defendant; and (5) the trial court noted that the ethical conflict "may or may not have resolved itself," but it denied defendant's request due to its "concerns" about the ethical obligations that had been previously raised.

Although that record shows that the trial court generally understood that defendant's right to be represented by retained counsel of his choice could be qualified by ethical or efficiency concerns, it does not demonstrate that the trial court weighed the relevant considerations and acted within the permissible range of its discretion in denying defendant's request to be represented by Mackeson and Hall. This record does not reveal whether there was a sufficient

risk that allowing that representation would unduly delay or disrupt the trial, or whether Mackeson and Hall's representation of defendant at trial would have violated any ethical or professional standards of conduct.

Here, most of the discussions about a potential conflict of interest occurred off the record, and the trial court did not make a record sufficiently demonstrating that its concerns about a continuing ethical issue were justified and threatened to delay or disrupt the trial. Instead, the trial court just stated that it had concerns, and although it described the prior ethical conflict as "significant," it acknowledged that the prior conflict "may or may not" have been resolved.  On this record, those generalized concerns do not outweigh defendant's constitutional right to be represented by retained counsel of his choice.

Under the Sixth Amendment, as the United States Supreme Court explained in *Wheat*, although a trial court has "substantial latitude" in denying a defendant's right to retained counsel of choice due to ethical concerns, the trial court "must take adequate steps to ascertain" whether taking that action is warranted. 486 US at 163; 160. After taking those steps, where a trial court "justifiably finds" an actual or potential conflict of interest exists, it has discretion under the Sixth Amendment to decline defendant's choice of retained counsel. *Id.* at 162. The same analytical process is required under Article I, section 11, of the Oregon Constitution. But the record in this case does not show what steps, if any, the trial court took to "ascertain" whether its concerns about an ethical conflict were justifiable, or even whether an ethical conflict continued to exist.

The possibility that one or more of the off-the-record discussions might have justified the trial court's exercise of discretion is insufficient to uphold defendant's conviction. As we explained in *Lutz*, "nothing of importance bearing on the conduct of the trial should be 'off the record.'" 306 Or at 503. And as we stated in *Hightower*, "the test is not whether the court reasonably could have" denied defendant's request in the exercise of its discretion. 361 Or at 422. Rather, "[t]he test is whether the record reflects that the trial court's

actual decision amounted to a reasonable exercise of its discretion." *Id.*

Applying that test, the record in this case does not reflect that the trial court's decision amounted to a reasonable exercise of its discretion. Because the state did not object on the record to defendant's request to be represented by Mackeson and Hall, the court's decision was based on its own lingering concerns about possible ethical issues that might disrupt or delay the trial. But trial courts are always alert for something that might disrupt or delay a trial. To overcome a defendant's constitutional right to retained counsel of their choice, the record must reflect that those concerns were reasonable under the circumstances, thereby showing that its decision was a permissible exercise of its discretion.

Contrary to the state's assertion, characterizing the ethical conflict that led Mackeson and Hall to withdraw in the first place as "significant" is not enough to support the trial court's exercise of discretion, especially considering the court's acknowledgment that the original conflict "may or may not" have been resolved. Instead, to show that its decision was a permissible exercise of discretion, the court itself needed to explain the nature of its concerns, why it determined that those concerns were justifiable under the circumstances, and why it determined that they might unduly delay or disrupt the trial. Making an adequate record does not mean that trial courts must invade the attorney-client privilege or pressure a defendant to waive that privilege, and it may require the court to address the defendant or defense counsel on the record but outside the presence of the prosecutor, and to seal the record to preserve confidentiality.

The record in this case does not demonstrate that the trial court's denial of defendant's constitutional right to be represented by the attorneys he retained to represent him at trial was a permissible exercise of its discretion. Accordingly, as in *Stanton* and *Hightower*, the appropriate result is to reverse and remand for a new trial.[9]

---

[9] The state does not contend that any error should be considered harmless under Article VII (Amended), section 3, of the Oregon Constitution, "but we have an independent obligation to consider whether defendant was prejudiced." *State*

The Court of Appeals' decision is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for a new trial.

---

*v. Sperou*, 365 Or 121, 140, 442 P3d 581 (2019). The "harmless error" test asks a single question: is there little likelihood that a particular error affected the verdict? *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). We cannot say that there was "little likelihood" that this error affected the verdict because, as in *Stanton*, we "cannot determine what the outcome of the case would have been" if defendant had been represented by different counsel. *Stanton*, 369 Or at 723; *see also State v. Cole*, 323 Or 30, 36-37, 912 P2d 907 (1996) (concluding that trial court's failure to obtain a valid waiver of counsel was prejudicial and not harmless because this court was "unable to determine the outcome" had the hearing been conducted with the assistance of counsel). Because we remand for a new trial based on Article I, section 11, of the Oregon Constitution, we need not decide whether the trial court also violated defendant's rights under the Sixth Amendment.