30 November 6, 2024 No. 797

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KENNETH MARION DUNHAM,
aka Kenneth M. Dunham,
*Defendant-Appellant.*

Washington County Circuit Court
C083014CR, C040376CR, D043244M;
A178148 (Control), A178154, A178155

Oscar Garcia, Judge.

Argued and submitted May 15, 2024.

Brian Hardingham, California, argued the cause for appellant. Also on the briefs were Public Justice, California; Sonja Good Stefani and Metropolitan Public Defender; Emily Teplin Fox, Kelsey Heilman and Oregon Law Center. Also on the opening brief was John He, California.

Colm Moore, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Aliza B. Kaplan and Lewis & Clark Law School filed the brief *amicus curiae* for Lewis & Clark Law School Criminal Justice Reform Clinic, American Civil Liberties Union, Inc., Oregon Tradeswoman, Oregon Consumer Justice, Fines & Fees Justice Center, and National Consumer Law Center.

Rosalind M. Lee and Nora E. Coon filed the brief *amicus curiae* for Oregon Criminal Defense Lawyers Association.

Before Aoyagi, Presiding Judge, Egan, Judge, and Kistler, Senior Judge.*

_____

* Egan, J., *vice* Jacquot, J.

AOYAGI, P. J.

Vacated and remanded.

**AOYAGI, P. J.**

In each of these consolidated criminal cases, defendant moved the trial court to waive or convert to community service the unpaid fines, unitary assessments, and costs imposed on him years ago as part of his sentencing for various criminal convictions. Defendant represented to the court that he cannot afford to pay those financial obligations because he cannot find employment, that he cannot find employment because of his criminal history, and that he cannot expunge his criminal history because of the unpaid financial obligations.[1] The trial court denied the motions.

On appeal, defendant argues that the trial court erred on both statutory and constitutional grounds. The state challenges appealability and also defends the court's ruling on the merits. As described below, we conclude (1) that the orders are appealable; (2) that the trial court's ruling on waiver of costs under ORS 161.665(5) warrants a remand for clarification of the court's reasoning; (3) that the trial court did not err in declining to waive fines under ORS 161.685(5); and (4) that defendant's constitutional arguments are inadequately developed to address. Accordingly, we vacate and remand for reconsideration of the portions of the orders addressing waiver of costs.

## I.   PROCEDURAL HISTORY

The relevant facts are undisputed. Between 2004 and 2017, in three separate cases, defendant was convicted of offenses committed prior to 2009. He was sentenced to probation in each case. The court also imposed fines totaling $792, unitary assessments totaling $174, and costs (mostly for court-appointed attorney fees) totaling $1,042. Since sentencing, interest and various administrative fees have accrued due to nonpayment. Defendant paid about $150 in 2017 and 2018, but the rest remains owing. Except for the unpaid debt, defendant has completed serving his sentences.

---

[1] *Amici* describe defendant's situation as a "debt trap" and assert that it is a situation that "is neither unique nor rare" for criminal defendants. They point to a growing body of research regarding the "troubling twin consequences of court debt that cannot possibly be repaid and criminal records that prevent employment and financial security."

In January 2022, defendant filed motions to waive the unpaid financial obligations or, alternatively, to convert them to community service. As legal authority for the motions, defendant relied on ORS 161.665(5), which allows trial courts to excuse or reduce costs in certain circumstances; ORS 161.685(5), which allows trial courts to excuse or reduce fines in certain circumstances; and the Excessive Fines Clauses of the state and federal constitutions, which prohibit the imposition of excessive fines.[2] *See* UTCR 4.120 (allowing a criminal defendant to "file a motion in the criminal case requesting that the court reduce, modify, or waive unpaid fines, fees, and costs * * * as provided in ORS 161.685(5), ORS 161.665(5), * * * or other applicable legal authority").

In a supporting memorandum, defendant described both his reformation since he committed his crimes and his family's current financial situation. He explained that he committed his crimes during a period in which "he was struggling with addiction and suffered mental health issues." He was "unable to maintain employment" and "not able to function" for many years. But since 2008, he has stopped using drugs and engaged in treatment. That personal success put a stop to his criminal conduct, but it did not resolve his financial struggles. He explained that his criminal record—especially his felony convictions—hampers his ability to find employment. That difficulty was exacerbated when defendant developed a physical disability about a year before filing his motions, which prevents him from plying his trade as a mechanic. At the time of the hearing, defendant and his wife and three children had regained housing, after three years of houselessness. The family was living off defendant's disability benefits, his wife's part-time income, and food stamps. Their expenses outstrip their income.

The trial court held a hearing on defendant's motions, at which the state opposed the relief sought. No

---

[2] In neither the trial court nor on appeal has either party addressed whether ORS 161.665(5) or ORS 161.685(5) apply to the waiver of unitary assessments. Unitary assessments are no longer imposed but were a type of "penal obligation in the nature of a fine." *Former* ORS 137.290 (2009), *repealed by* Or Laws 2011, ch 597, § 118. For present purposes, we assume without deciding that unitary assessments qualify as fines under ORS 161.685(5).

testimony or other evidence was offered, but defendant represented to the court that, given the financial hardship facing his family, "he will never be able to pay these fines off, which means he will never be able to expunge these cases from his record."

The trial court denied the motion, based on the age of the cases and defendant's neglect in not paying the fines for such a long time:

"[THE COURT:] So, you know, the problem I have here, I mean, this is a very old case. Okay. And, you know, I'm fair to people, and I've waived fines before, you know, understanding the situation.

"THE DEFENDANT: Right. I—

"THE COURT: But these are very old cases where back then I don't know what his situation was. They were just neglected. They weren't paid for. I don't know if he was working, or what his situation was.

"THE DEFENDANT: I was not.

"THE COURT: So—well, you know, and then he's— you know, his SSI—or—I'm sorry he's disabled now.

"So, I just don't have—you know, part of the obligations in order to successfully complete a probation, for the record, is to, you know, pay your fines and fees. All right?

"So, anything further from the State?

"[PROSECUTOR]: No, Your Honor.

"THE COURT: Okay. Based on this record, I'm going to deny the motion at this time."

The court declined defendant's request to say more. Defendant appeals the denial of his motions to waive fines and costs.

## II. APPEALABILITY

We begin as we must with the question of whether the trial court's orders are appealable. "To exist, the right of appeal must be conferred by a statute." *State v. K. P.*, 324 Or 1, 4, 921 P2d 380 (1996). Absent such a statute, we "may not reach any substantive issues presented." *Id.*

Defendant argues that the orders are appealable under ORS 19.205(5), which provides:

> "An appeal may be taken from the circuit court in any special statutory proceeding under the same conditions, in the same manner and with like effect as from a judgment or order entered in an action, unless appeal is expressly prohibited by the law authorizing the special statutory proceeding."

The state disputes that these cases involve "special statutory proceedings." In the state's view, defendant's motions are "intimately bound up with his underlying criminal proceedings" and therefore are governed by ORS 138.035, *i.e.*, the statute governing direct appeals in criminal cases. That statute, the state correctly points out, would not confer appellate jurisdiction in these cases. As such, the question before us is whether this appeal is taken from a "special statutory proceeding."[3]

There is no statutory definition of a "special statutory proceeding." *Garganese v. Dept. of Justice*, 318 Or 181, 185, 864 P2d 364 (1993). Since the statute's enactment in 1927, the appellate courts have endeavored to define the phrase by identifying the crucial attributes of a "special statutory proceeding." *See State v. Threet*, 294 Or 1, 4-6, 653 P2d 960 (1982) (describing the history of the phrase and early case law construing it). As summarized by the Oregon Supreme Court, the crucial attributes of a "special statutory proceeding" are that it is "a separate and distinct judicial proceeding, with clearly defined parties, that does not disrupt other judicial proceedings" and that it is a "'final and complete determination of the matter.'" *Garganese*, 318 Or at 186 (quoting *Dept. of Rev. v. Universal Foods Corp.*, 311 Or 537, 544, 815 P2d 1237 (1991)). Those attributes are evaluated in a functional—rather than a formalistic—manner. *State v. Hart*, 188 Or App 650, 654, 72 P3d 671, *rev den*, 336 Or 126 (2003).

For instance, a proceeding can qualify as a "separate and distinct judicial proceeding" even if it arises, as a formal matter, within the bounds of an existing criminal case. In

___

[3] Defendant also makes an alternative jurisdictional argument under ORS 19.205(3), which we need not reach given our decision under ORS 19.205(5).

*State v. Branstetter*, 332 Or 389, 392, 29 P3d 1121 (2001), a criminal defendant appealed an order requiring the forfeiture of his animals to an animal care agency during the pendency of his criminal case. As required by statute, the forfeiture order was issued within the same case number as his criminal prosecution. *Id*. at 393 & n 4. However, the forfeiture was not premised upon whether the defendant was guilty of the charged crime. Instead, it was premised on whether the animal care agency could establish probable cause of abuse, neglect, or abandonment of the forfeited animals at a forfeiture hearing. *Id.* at 393 & n 6. The Supreme Court concluded that, although the forfeiture proceeding arose within the bounds of a criminal case and in fact depended on the criminal case for its existence, it did not "arise out of the criminal action, resolve any controversy in the criminal action, or otherwise affect or depend on the substance of the criminal action." *Id*. at 398-99; *see also K. P.*, 324 Or at 6 (holding that an order denying in part the defendant's motion to seal the records of a criminal conviction was appealable as a "special statutory proceeding," notwithstanding that the order was entered under the same case number as the criminal case).

By contrast, where a proceeding is intended to correct an error in a criminal case or otherwise obtain a new trial, we have held that it is too intimately bound up with the criminal case to qualify as a "special statutory proceeding." For example, in *State v. Hart*, the defendant appealed an order denying his motion to correct the judgment in a criminal case by merging two convictions. 188 Or App at 652. We held that the motion to correct was not a "special statutory proceeding" because the motion (1) arose "directly out of the criminal action," in that the statute authorizing the motion was directed to the "sentencing court"; (2) sought to "resolve a controversy in the criminal action—whether the judgment in the criminal action [was] erroneous"; and (3) sought to "affect the substance of the underlying criminal action," in that it would "result in a modification of the terms of a defendant's sentence." *Id*. at 654-55.

Similarly, in *State v. Johnson*, we held that the denial of a motion requesting DNA testing was not a "special statutory proceeding" because the motion was "intimately

bound up with the underlying criminal proceeding." 254 Or App 447, 455, 295 P3d 677, *rev den*, 353 Or 747 (2013). "The purpose of the proceeding is to allow the defendant to obtain evidence of his innocence of the conduct in question and, ultimately, to set aside the convictions and obtain a new trial in the case." *Id*.[4]

　　　Here, the state argues that this case is comparable to *Hart* and *Johnson* because the remedy that defendant sought would affect the substance of the underlying criminal action by modifying the terms of his sentence. Defendant disagrees. He asserts that he is not challenging the lawfulness of his original sentences, nor is he seeking to collaterally attack them. Instead, he is availing himself of a separate and distinct statutory procedure that allows him to seek the waiver of his financial obligations based on his *current* financial circumstances. He compares this case to *K. P.*, in which an order denying a motion to seal the records of a criminal conviction was appealable despite the fact that the remedy sought would affect the underlying criminal case, because that remedy was not premised on any legal challenge to the underlying prosecution.

　　　We are persuaded that defendant has the better argument. His appeals arise from a statutory mechanism that allows trial courts to waive or reduce previously imposed financial obligations in criminal cases based on the defendant's present circumstances, without regard to the lawfulness of their original imposition. Defendant is not attempting to relitigate his guilt or obtain a new sentencing hearing. We therefore agree with defendant that this case is most analogous to *Branstetter* and *K. P.* Although the proceeding arises within the confines of defendant's criminal cases, it is concerned with factual findings and legal matters that were not at issue in defendant's underlying criminal cases and do not concern the propriety of his original criminal prosecutions. In short, the proceeding contains the core attributes that the Supreme Court has identified for a "special statutory proceeding"—a separate and distinct judicial proceeding, with clearly defined parties, that does

---

[4] Following our decision in *Johnson*, the legislature enacted a statute that authorizes the appeal of an order denying DNA testing. *State v. Diaz-Avalos*, 294 Or App 37, 41, 428 P3d 932 (2018), *rev den*, 365 Or 502 (2019) (discussing same).

not disrupt other judicial proceedings and that is a final and complete determination of the matter. The orders are appealable.

### III.   STATUTORY ANALYSIS

We turn now to the merits and begin with defendant's statutory arguments. *See, e.g.*, *State v. Wolfe*, 368 Or 38, 43, 486 P3d 748 (2021), *cert den*, ___ US ___, 142 S Ct 1219 (2022) (addressing statutory arguments before constitutional arguments in accordance with Oregon's "first-things-first" approach). As recounted above, defendant moved for the waiver or conversion of his financial obligations under ORS 161.665(5) and ORS 161.685(5). Those statutes deal with costs and fines, respectively. Defendant argues that the trial court abused its discretion in denying his motions because the court based its rulings on "considerations not contemplated by" those statutes. Identifying the proper considerations contemplated by those statutes is a question of statutory construction, which requires us to examine each statute's text, context, and any helpful legislative history to determine the enacting legislature's intent. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). We address each statute in turn.

A.   *Waiver of Costs under ORS 161.665(5)*

ORS 161.665(1) authorizes a sentencing court to impose in the judgment a money award for "all costs specially incurred by the state in prosecuting the defendant." That includes reasonable attorney fees for court-appointed counsel. ORS 161.665(1), (2). ORS 161.665(4) places an important guardrail on that authority, however, by requiring a finding at sentencing that the defendant is or may be able to pay, so as to reduce the risk that costs will be imposed on defendants who cannot pay them:

> "The court may not sentence a defendant to pay costs under this section unless the defendant is or may be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose."

ORS 161.665(5), in turn, gives the court post-sentencing authority to relieve a defendant of previously imposed costs based on manifest hardship:

> "A defendant who has been sentenced to pay costs under this section and who is not in contumacious default in the payment of costs may at any time petition the court that sentenced the defendant for remission of the payment of costs or of any unpaid portion of costs. If it appears to the satisfaction of the court that payment of the amount due will impose manifest hardship on the defendant or the immediate family of the defendant, the court may enter a supplemental judgment that remits all or part of the amount due in costs, or modifies the method of payment under ORS 161.675."[5]

Although subsection (5) is the direct focus of our inquiry in this case, subsection (4) provides important context, so we begin with it. Subsection (4) prohibits the imposition of costs unless the court affirmatively finds that a defendant "is or may be able to pay them." Moreover, the state bears the burden of proving that ability to pay. *State v. Geddeda*, 313 Or App 440, 444, 493 P3d 1112 (2021). A trial court commits plain error if it imposes costs without making the necessary finding based on legally sufficient evidence. *State v. Meyer*, 313 Or App 611, 613, 496 P3d 1117 (2021).

While subsection (4) seeks to avoid the imposition of costs upon a defendant who cannot pay them or likely will not be able to pay them, subsection (5) acts as an additional safety valve for situations where a defendant was deemed able to pay at the time of sentencing but later faces circumstances that make payment a manifest hardship to the defendant or their family. And, indeed, the existence of that safety valve has been instrumental in upholding the constitutionality of ORS 161.665 as a whole. The United States Supreme Court summarized the operation of ORS 161.665 (1973) in this way:

---

[5] We note that ORS 161.665 has been amended a number of times over the years. For example, what is now ORS 161.665(5) originally allowed a court to sentence the defendant to pay costs only if the defendant "is or will be able to pay them," but the quoted language was amended to "is or may be able to pay them" in 1981. Or Laws 1981, ch 3, § 120 (Spec Sess). No one has suggested that any historical amendments to ORS 161.665 are material to our analysis.

"[T]he recoupment statute [(ORS 161.665 (1973))] is quite clearly directed only at those convicted defendants who are indigent at the time of the criminal proceedings against them but who subsequently gain the ability to pay the expenses of legal representation. Defendants with no likelihood of having the means to repay are not put under even a conditional obligation to do so, and those upon whom a conditional obligation is imposed are not subjected to collection procedures until their indigency has ended and no 'manifest hardship' will result. The contrast with appointment-of-counsel procedures in States without recoupment requirements is thus relatively small: a lawyer is provided at the expense of the State to all defendants who are unable, even momentarily, to hire one, and the obligation to repay the State accrues only to those who later acquire the means to do so without hardship."

*Fuller v. Oregon*, 417 US 40, 46, 94 S Ct 2116, 40 L Ed 2d 642 (1974) (footnote omitted).

In rejecting an equal protection challenge to ORS 161.665 (1973), the Court noted that a defendant has "the opportunity to show at any time that recovery of the costs of his legal defense will impose 'manifest hardship[.]'" *Id*. at 47. Similarly, in rejecting an argument that ORS 161.665 (1973) unconstitutionally infringes on the right to court-appointed counsel, the Court stated, "The Oregon statute is carefully designed to insure that only those who actually become capable of repaying the State will ever be obliged to do so. Those who remain indigent or for whom repayment would work 'manifest hardship' are forever exempt from any obligation to repay." *Id*. at 53 (footnote omitted); *accord State v. Mickow*, 277 Or App 497, 502, 371 P3d 1275 (2016) (noting that ORS 161.665 survived constitutional challenge because "of the presence of multiple procedural safeguards designed to make sure that 'the obligation to repay the State accrues only to those who later acquire the means to do so without hardship'" (quoting *Fuller*, 417 US at 46)). In short, the text and context of ORS 161.665(5) demonstrate that it is intended to ensure that "costs" are laid only upon the shoulders of those who can afford to pay them without "manifest hardship."

That purpose is borne out by the meager legislative history of which we are aware. The statute originated as

part of Oregon's 1971 Revised Criminal Code. According to the commentary of the Criminal Law Revision Commission, the provision now codified as ORS 161.665(5) "allows the defendant, if his situation deserves it, to apply to the court for remission of the payment of costs." Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 80, 77 (July 1970).

Recognizing the purpose of subsection (5) answers only part of the question, however. It remains to determine the proper analysis required for addressing a petition brought under the subsection.

From the plain text of the subsection, we understand that it contemplates a three-step analysis. First, the court must determine that the defendant is not "in contumacious default." ORS 161.665(5). Second, the court must determine that the "payment of the amount due will impose manifest hardship on the defendant or the immediate family of the defendant." *Id.* Third, if those two requirements are met, the court must exercise its discretion whether to "remit[] all or part of the amount due" or to modify the method of payment. *Id.* The first two steps require the court to make factual findings, whereas the third step involves an exercise of discretion.

At the first step of the analysis, we construe "contumacious" according to its plain and ordinary meaning. *See Dowell v. Oregon Mutual Ins. Co.*, 361 Or 62, 69, 388 P3d 1050 (2017) ("When the legislature has not defined a word or a phrase, we assume, at least initially, that the word or phrase has its plain, natural, and ordinary meaning." (Internal quotation marks omitted.)). The common meaning of "contumacious" is "perverse in resisting authority : stubbornly disobedient : REBELLIOUS, IRRECONCILABLE." *Webster's Third New Int'l Dictionary* 497 (unabridged ed 2002); *accord* Black's Law Dictionary 419 (12th ed 2024) (defining "contumacy" as "[c]ontempt of court; the refusal of a person to follow a court's order or direction" and "contumacious conduct" as "[a] willful disobedience of a court order"). Also, it bears noting that the statute uses the present tense, *i.e.,* "is not in contumacious default." We therefore understand that, as a prerequisite to obtaining relief under subsection (5), the

defendant must show that they are not presently in default of payment due to their own willful disobedience of the court's order to pay costs.

At the second step of the analysis, the defendant must demonstrate that paying the costs will "impose manifest hardship" on them or their immediate family. The term "manifest" refers to something that is "capable of being easily understood or recognized at once by the mind : not obscure : OBVIOUS," *Webster's* at 1375, while "hardship" refers to "a particular instance or type of suffering or privation," *id.* at 1033. Thus, based on the common meaning of the words, the relevant factual inquiry is whether the defendant's payment of the costs would lead to the obvious suffering or privation of the defendant or their immediate family.

Beyond looking to the dictionary, however, it is perhaps more helpful to understand the "manifest hardship" inquiry in the context of the overarching purpose of subsections (4) and (5), which is, again, to ensure that costs are exacted only from those able to afford them. Under subsection (4), to lawfully impose costs in the first place, the sentencing court must have evidence before it that the defendant is or may be able to pay them. We understand the second step of the analysis under subsection (5) to require a similar inquiry, except that the burden is on the defendant to establish the inability to pay costs without manifest hardship. In other words, subsection (4) requires evidence that a defendant is or may be able to pay the costs in the foreseeable future, whereas subsection (5) requires evidence that the defendant is unable to pay them without manifest hardship.

Turning to the third step of the analysis, if the court finds that the defendant is not in contumacious default and that paying the costs will pose a manifest hardship, then the last step requires the exercise of discretion, as subsection (5) provides only that the court "may" grant the defendant's request. Given the context of ORS 161.665 as a whole, however, the exercise of that discretion should be tied to the underlying purposes of the statute. As we have explained, the statute exists to allow the state to recoup costs from defendants who can afford to pay them—while trying to

minimize the risk that costs will be imposed on people who cannot realistically pay them and then providing a post-sentencing procedure to capture situations where it becomes clear that the person cannot afford to pay them, or can no longer afford to pay them, without manifest hardship. Accordingly, in deciding whether and how to exercise discretion, the trial court should consider factors such as whether the defendant can pay a portion of the costs, whether there is some likelihood that the defendant's financial situation will change in the near future, whether there are readily available employment opportunities that the defendant has not pursued, whether the defendant could avoid manifest hardship with an alternative payment schedule, and the like.

Having described the necessary three-step analysis under ORS 161.665, we note that different standards of review apply to the denial of a motion under ORS 161.665 depending on which step the trial court found to be dispositive. The first two steps of the analysis involve factual findings, which are reviewed for evidentiary support in the record, except that any attendant statutory construction issues (such as the meaning of "contumacious default" or "manifest hardship") would be reviewed for errors of law. *State v. Cazares-Mendez*, 350 Or 491, 510, 256 P3d 104 (2011). The third step involves a discretionary decision that is reviewed for abuse of discretion, *i.e.*, to determine whether the court's decision is within the legally permissible range of choices, taking into account the factors relevant to that decision as just described. *See State v. Ramoz*, 367 Or 670, 703, 483 P3d 615 (2021) (describing abuse-of-discretion standard).

In this case, based on its remarks when ruling, the trial court denied the motion because it was concerned that defendant had "neglected" his financial obligations in the past, perhaps not wanting to reward defendant for not paying the costs earlier when he might have been in a better position to do so. It is unclear to us whether the court viewed the duration of nonpayment as relevant to the "contumacious default" finding, the "manifest hardship" finding, or the ultimate exercise of discretion. Any of the three seems

possible, depending on what the court had in mind. Given that reality, it would be improper for us to simply presume the necessary factual findings and go directly to the last step of the analysis, limiting our review to abuse of discretion.[6] *See Pereida-Alba v. Coursey*, 356 Or 654, 671, 342 P3d 70 (2015) (in the absence of express factual findings, we will normally presume that the trial court made implicit findings consistent with its ultimate decision, but "the presumption does not apply" unless the finding was necessary to the court's ultimate conclusion). Instead, under the circumstances, the appropriate course is to vacate the orders and remand for the trial court to reconsider and explain its ruling on costs within the three-step framework articulated herein.

B.    *Waiver of Fines under ORS 161.685(5)*

We next consider the trial court's denial of defendant's request to waive fines under ORS 161.685(5). ORS 161.685(1) authorizes a court to reduce or waive a past-due fine, or to extend the time for payment of a past-due fine, if the court determines that the nonpayment is not an act of contempt:

> "If it appears to the satisfaction of the court that the default in the payment of a fine or restitution is not contempt, the court may enter an order allowing the defendant additional time for payment, reducing the amount of the payment or installments due on the payment, or revoking the fine or order of restitution in whole or in part."

ORS 161.685(5).

As a preliminary matter, we note that, unlike with costs (which require a finding that the defendant is or may be able to pay), a court imposing a fine on a criminal defendant need only "consider" the financial burden of the fine on the defendant:

> "In determining whether to impose a fine and its amount, the court shall consider:

---

[6] We do presume, as do the parties, that the court viewed defendant's statements to the court at the hearing as evidence from which it could make findings, even though defendant was not sworn in.

"(1)   The financial resources of the defendant and the burden that payment of a fine will impose, with due regard to the other obligations of the defendant; and

"(2)   The ability of the defendant to pay a fine on an installment basis or on other conditions to be fixed by the court."

ORS 161.645. Consequently, "[t]he question of whether to impose a fine, and the amount to impose, is largely within the trial court's discretion and to be determined based on the factors ordinarily appropriate in sentencing." *State v. Moreno-Hernandez*, 365 Or 175, 181, 442 P3d 1092 (2019).

The broader discretion to impose fines under ORS 161.645 is mirrored in the broader discretion whether to grant relief from fines under ORS 161.685(5). Unlike the three-step analysis for cost waiver under ORS 161.665(5), ORS 161.685(5) contemplates a two-step analysis for fine waiver. First, the court must decide whether it is satisfied that the "the default in the payment of [the] fine *** is not contempt," *i.e.*, that the defendant's failure to pay the fine is not a contemptuous act. ORS 161.685(5). Second, if so, then "the court may enter an order allowing the defendant additional time for payment, reducing the amount of the payment or installments due on the payment, or revoking the fine or order of restitution in whole or in part." Nothing in the text, context, or legislative history of which we are aware places any clear limits on the exercise of that discretion. Beyond keeping in mind the general goals of criminal sentencing, *see* Or Const, Art I, § 15 ("Laws for the punishment of crime shall be founded on these principles: protection of society, personal responsibility, accountability for one's actions and reformation."), a trial court has broad discretion in deciding whether to grant relief from fines under ORS 161.685(5).

Here, defendant has not identified any way in which the trial court abused its broad discretion with respect to waiver of fines.

*Amici* make a compelling argument that criminal fines disproportionately affect indigent defendants, often turning what is supposed to be a "temporary punishment into a lifelong status." Given the barrier that criminal history

can pose to gainful employment, the fact that payment of all financial obligations owed to the court is a prerequisite for expungement of a criminal conviction adds to the difficult reality. *See* ORS 137.225(1)(a) (requiring, in order to be eligible for expungement, that a person "has fully complied with and performed the sentence of the court"). *Amici* describe indigent defendants as facing a Catch-22: They cannot afford to pay off their debt because they cannot find employment due to their criminal record, and they cannot expunge their criminal record because of their inability to pay off their debt. No matter how compelling those arguments may be, however, they are policy arguments, and policy decisions are the purview of the legislature, not the courts. We can only construe and apply the statutes as currently written and, as currently written, ORS 161.685(5) gives trial courts broad discretion whether to grant an indigent defendant relief from previously imposed fines.

## IV.  CONSTITUTIONAL ARGUMENTS

Lastly, we consider defendant's constitutional arguments. Defendant contends that denying his motions violated the excessive fines clauses of the state and federal constitutions. *See* Or Const, Art I, § 16 ("Excessive bail shall not be required, nor excessive fines imposed."); US Const, Amend VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."). Like defendant, we are unaware of any court having ever addressed whether a lawfully imposed fine can become unconstitutional with the passage of time due to a post-sentencing change in the defendant's financial circumstances. Defendant's argument therefore presents a question of first impression under both state and federal law.

Although defendant argues at length that the fines that he owes are excessive in light of his current financial circumstances, he has not developed any argument as to how or why the excessive fines clauses would apply at any time other than sentencing. *See* Or Const, Art I, § 16 ("Excessive bail shall not be required, nor excessive fines *imposed*." (Emphasis added.)); US Const, Amend VIII ("Excessive

bail shall not be required, nor excessive fines *imposed* \* \* \*." (Emphasis added.)).

Under Oregon law, when construing an original constitutional provision, "we examine the text of the provision in its context, the historical circumstances surrounding its adoption, and the case law that has construed it." *State v. Autele*, 372 Or 489, 496, 551 P3d 376 (2024). "Our goal is 'to identify, in light of the meaning understood by the framers, relevant underlying principles that may inform our application of the constitutional text to modern circumstances.'" *Id*. (quoting *State v. Davis*, 350 Or 440, 446, 256 P3d 1075 (2011)). As to the federal constitution, "[i]n the absence of controlling Supreme Court precedent, we must determine, as best we can, how that Court would rule if presented with the question before us." *State v. Williams*, 357 Or 1, 18, 346 P3d 455 (2015). We understand that task as no less arduous than that required in construing our own constitution.

In asking us to hold for the first time that a lawfully imposed fine can be rendered unconstitutional by a later change in the defendant's circumstances, defendant has failed to establish—in keeping with the necessary methodologies described above—that there is a well-founded basis for doing so. We decline to develop defendant's argument for him. *See Johnson v. Monsanto Co.*, 333 Or App 678, 700, 554 P3d 290 (2024) (declining to undertake a necessary legal analysis where the appellant had "not undertaken that analysis in its brief on appeal").

Vacated and remanded.