Argued and submitted June 22, 2021, resubmitted January 25; decision of Court of Appeals reversed, judgment of circuit court reversed, and case remanded to circuit court for further proceedings May 26, 2022

STATE OF OREGON,
*Respondent on Review,*

*v.*

LAMAR LEE STANTON,
*Petitioner on Review.*

(CC 17CR17894) (CA A167725) (SC S067829)

511 P3d 1

Defendant asserted that the trial court violated his right to counsel under Article I, section 11, of the Oregon Constitution, by allowing him to proceed at trial without court-appointed counsel. *Held*: Defendant did not waive his right to court-appointed counsel either expressly through a verbal statement or impliedly through misconduct.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

On review from the Court of Appeals.*

Mary M. Reese, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs was Ernest G. Lannet, Chief Defender.

Rolf C. Moan, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Walters, Chief Justice, and Balmer, Flynn, Duncan, Nelson, Garrett, and DeHoog, Justices.**

_____

* On appeal from Lane County Circuit Court, Maurice K. Merten, Judge. 303 Or App 814, 462 P3d 790 (2020).

** Nakamoto, J., retired December 31, 2021, and did not participate in the decision of this case.

DUNCAN, J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

**DUNCAN, J.**

In this criminal case, the trial court entered a judgment of conviction and sentence, and defendant appealed, arguing that the trial court had erred by proceeding as if defendant had waived his right to court-appointed counsel. The Court of Appeals affirmed without opinion. *State v. Stanton*, 303 Or App 814, 462 P3d 790 (2020). For the reasons explained below, we reverse and remand.

## I. BACKGROUND

Defendant was charged with three counts of first-degree sexual abuse and two counts of first-degree sodomy. Because defendant is indigent, the trial court appointed counsel to represent him. Over the course of the trial court proceedings, defendant was represented by several different court-appointed lawyers. Defendant's final lawyer was Lee-Mandlin.

Lee-Mandlin filed a motion to have defendant evaluated to determine whether he was able to aid and assist in his defense. The trial court granted the motion, and defendant, who was being held in jail pending trial, was sent to the state hospital for an evaluation.

Defendant expressed frustration with Lee-Mandlin's representation and asked her to move to withdraw. Lee-Mandlin filed two motions to withdraw but told the trial court that she was prepared to represent defendant. The court denied the motions, and—after defendant was evaluated at the state hospital and the trial court determined that he was able to aid and assist in his defense—the case proceeded to a bench trial.

The charges against defendant were based on allegations that he had sexually abused a young girl, L, who was the daughter of a woman he had been dating, C. On the second day of trial, after L and C testified, the state called the final witness in its case-in-chief, Satterwhite, a forensic interviewer who had interviewed L. During the state's direct examination of Satterwhite, defendant told the trial court that he needed a new attorney:

"[DEFENDANT]:   I need new counsel, Your Honor. I'm not comfortable with my attorney. She is not—she's not helping me at all. She's not bringing no evidence to help me.

"She's not bringing none of the—the psych evaluations to show that I'm not a crazy evil person. I took sexual psych evaluation show[ing] that I'm (indiscernible). She's not helping me. She's not asking the right questions. She's not—"

At that point, Lee-Mandlin asked the court for a break. Defendant kept speaking, and Lee-Mandlin kept asking for a break. Ultimately, the court took a recess.

After the recess, the prosecutor spoke first and said that defendant had been disruptive throughout the trial and that, if defendant continued to be disruptive, he should be removed from the courtroom and Lee-Mandlin could continue in his absence.

Lee-Mandlin spoke next and asked the court to allow her to withdraw. She told the court that her motion was based not on defendant's disruptiveness, which the prosecutor had just mentioned, but instead was based on her belief that, under the Rules of Professional Conduct, she could not continue to represent defendant:

"[LEE-MANDLIN]:   *** Your Honor, I would respectfully ask that the Court allow me to withdraw at this point.

"I believe under *** the Oregon Rules of Professional Conduct, 1.8, I should be allowed to withdraw.

"In addition, I believe that I should be able to withdraw under *** 1.2. At this point, Your Honor, I cannot—I cannot continue representing Mr. Stanton under the current circumstances, that are completely different than what [the prosecutor] has told the Court about."[1]

After Lee-Mandlin finished, the prosecutor told the court that he believed defendant was waiving his right to an attorney:

"[THE PROSECUTOR]:   At this point, Your Honor, *** I believe [defendant is] waiving his right to an attorney

---

[1] Rule 1.8 concerns conflicts of interest and Rule 1.2 concerns the scope of representation and allocation of authority between lawyers and clients.

> \*\*\* in this trial. Because he is ultimately making it impossible for Ms. Lee-Mandlin to continue her representation.
>
> "So I believe that the defendant should be forced to continue on his own if ultimately the court grants [Lee-Mandlin's motion to withdraw]. But that's because of the choices he's made, not because of choices any of us \*\*\* have foisted upon him during \*\*\* the [pendency] of this trial."

The court then asked Lee-Mandlin about the basis for her motion to withdraw:

> "THE COURT:   Ms. Lee-Mandlin, I don't want to stomp all over your ethical considerations, but, quite frankly, I'm mystified as to your motion. I—I cannot imagine what is going on that would allow me to grant the motion at this late date.
>
> "We're right in the middle of trial. I mean, I know \*\*\* you say you've got ethical considerations. And, \*\*\* I can't stomp all over those. But \*\*\* I'm at a loss to understand the nature of your reason to withdraw."

Lee-Mandlin responded, "Your Honor, Mr. Stanton has made it clear that if I do not do things his way, there will be consequences." She then told the court that, under the Rules of Professional Conduct, she did not believe that she could say anything further. The court asked Lee-Mandlin if she was "talking about an attorney-client confidentiality," and Lee-Mandlin said that she was.

At that point, the court asked defendant whether he wanted Lee-Mandlin to withdraw, and, when defendant answered that he did, the court asked defendant whether he was prepared to represent himself:

> "THE COURT:   Mr. Stanton, I have some specific questions for you. Please answer them directly.
>
> "[DEFENDANT]:   Yes, sir.
>
> "THE COURT:   Do you want your lawyer to withdraw?
>
> "[DEFENDANT]:   Yes, sir.
>
> "THE COURT:   Did—did you say, yes?
>
> "[DEFENDANT]:   Yes, sir.

"THE COURT:   Are you prepared to represent your-self?

"[DEFENDANT]:   If I'm given a day or two, maybe, or I can pay for a lawyer, give me maybe 24 hours. I need a lawyer to come from Portland. Your Honor, I'm not *** a troublemaker, Your Honor. I don't know what's going on.

"Your Honor, I'm only asking these questions because I'm not getting business, okay? I'm in jail, so I'm assuming for a trial lawyer to come see me. To come and go over strategies. I took, as relevant, polygraphs and—

"THE COURT:   I'm going to ask that—I said to ask— I'm going to ask you questions, specifically.

"[DEFENDANT]:   Yeah.

"THE COURT:   Are you ready to represent yourself?

"[DEFENDANT]:   At this moment, with what I have today, no. But I have things—I have things—I just—I think I can represent myself if I can cross-examine my alleged victim and my witnesses, myself. Yes, I will be ready to represent myself. But I also need an attorney or you can provide me with one. But I'm ready."

Defendant then returned to his complaints about Lee-Mandlin:

"[DEFENDANT]:   I'm not giving [Lee-Mandlin] a hard time. I—I just don't know what's going on. That's why I'm asking her while I'm here. If she would come see me and visit me, I wouldn't have to ask, Your Honor.

"I'm just curious of what's going on. I didn't do a crime. I asked her could she provide[] a psych evaluation. She didn't give those to the Court. I'm, like, why are you not bringing those—

"THE COURT:   You're running off, again. Why do you need a half a day or a day to do what?

"[DEFENDANT]:   Because I need to call me my lawyer from Portland, that I wanted to call if I need one to appeal. But I can call her now or I have the evidence to myself that I can come.

"And, like I said, if I can cross-examine the alleged victim and the witness, myself, and call my witnesses that I've been asking for her to subpoena, that she didn't do."

Defendant continued to assert that he was innocent and to complain that Lee-Mandlin was "not helping" him, was "not doing exculpatory evidence," and was "not bringing no rebuttal evidence." In response, the court asked, "Are you telling me you think you could have another lawyer here tomorrow?" Defendant answered:

"[DEFENDANT]:   I can call. She can drive down from Portland. Yes, I can. If she'll take my retainer, she can. If she don't, then I have to juggle myself, Your Honor and then—come on my appeal, if you decide, what I hope that you don't do.

"But, like I said, I'm just not knowing what's going on. That's why I've been asking these questions. I'm not threatening her. I just don't know what's going on. That's normal, correct? No one gives me. My lawyer can't see me. I don't know what—what evidence we're presenting to the courtroom."

The court asked the prosecutor for his position on taking a recess until the next day. The prosecutor opposed the recess, stating that defendant had been "talking about raising money to get an attorney for months" and had been "trying to get [Lee-Mandlin] off for some period of time." The prosecutor also pointed out that defendant was talking about cross-examining witnesses who had finished testifying and that "no new lawyer is going to be able to help him with that." The prosecutor suggested that defendant was "having trouble accepting the fact that Ms. Lee-Mandlin is doing what she's supposed to be doing under the law."

The court asked defendant additional questions about the lawyer he wanted to call and whether he was ready to represent himself if he could not get another lawyer. Defendant answered that Lee-Mandlin had not properly cross-examined C. The court then repeated its question:

"THE COURT:   You're not answering my questions. If you can't get another lawyer, are you ready to represent yourself?

"[DEFENDANT]:   If I can cross-examine my alleged victim and witness, yes, I will be ready to represent myself, Your Honor. Yes.

"THE COURT: Well, you can only cross-examine a witness that's on the stand. Whether—what you do in your own case-in-chief is up to you."

The court then gave defendant the following choice:

"THE COURT: If I grant you a postponement, you're either going to have a lawyer here tomorrow or you're going to represent yourself.

"[DEFENDANT]: Okay, Your Honor.

"THE COURT: Do you understand that?

"[DEFENDANT]: Yes, sir. Yes, sir.

"THE COURT: You understand that condition?

"[DEFENDANT]: Yes, sir. Yes, sir. So I'm calling. I'll do my best to try to contact someone. If not, sir, I will represent myself.

"THE COURT: All right. Then we'll reconvene at 10 o'clock tomorrow morning. If you do not have a lawyer here, you will be representing yourself. We will continue with the witness that's on the stand."

To summarize, once the court asked defendant if he wanted Lee-Mandlin to withdraw and defendant said that he did, the court focused on whether defendant was prepared to represent himself. When defendant raised the possibility of retaining counsel overnight, the court allowed for that possibility but told defendant that, if he were unable to retain counsel, he would have to represent himself. Thus, the court put defendant in the position of either continuing with Lee-Mandlin as his court-appointed counsel or going without court-appointed counsel.

The next morning, defendant appeared in court without counsel, and proceedings began with the following exchange:

"THE COURT: Mr. Stanton, do you have a lawyer representing you?

"[DEFENDANT]: At the moment, sir, I would be representing myself.

"THE COURT: All right. Ms. Satterwhite, would you please retake the stand. You're still under oath."

Defendant represented himself for the final two days of the trial. The court found defendant guilty of all charges and sentenced him to 375 months in prison and post-prison supervision for life. Defendant appealed, and the Court of Appeals affirmed without a written opinion. *Stanton*, 303 Or App 814. On defendant's petition, we allowed review.

## II.  ANALYSIS

On review, defendant asserts that the trial court violated his right to counsel under Article I, section 11, of the Oregon Constitution, which provides, "In all criminal prosecutions, the accused shall have the right *** to be heard by himself and counsel." Under Article I, section 11, a defendant has the right either to represent himself or to be represented by counsel. *State v. Hightower*, 361 Or 412, 417, 393 P3d 224 (2017); *see also id.* at 416 ("The right to self-representation is the counterpart to the right to be represented by counsel at trial.").

If a defendant is indigent, the right to counsel includes the right to court-appointed counsel. *State v. Smith*, 339 Or 515, 526, 123 P3d 261 (2005). But an indigent defendant does not have the right to court-appointed counsel "of the defendant's own choosing." *State v. Langley*, 351 Or 652, 664, 273 P3d 901 (2012) (*Langley III*). Consequently, a trial court is not required to appoint a substitute lawyer for a defendant "'in the absence of a legitimate complaint concerning the one already appointed for him.'" *Id.* (quoting *State v. Davidson*, 252 Or 617, 620, 451 P2d 481 (1969)).

A defendant may waive his right to counsel. *State v. Meyrick*, 313 Or 125, 131, 831 P2d 666 (1992) (so stating and collecting cases). "A waiver is an intentional relinquishment or abandonment of a known right or privilege." *Id.* at 132. Therefore, in order to accept a defendant's waiver of counsel, a trial court must determine—and the record must reflect—that the waiver is both intentionally and knowingly made. *See id.* at 132-33, 132 n 8 (distinguishing the two components). Although Article I, section 11, "does not require a catechism by the trial court before the right to counsel may be validly waived by a defendant," *id.* at 134, "[t]he more relevant information that a trial court provides to a

defendant about the right to counsel and about the dangers and disadvantages of self-representation, the more likely it will be that a defendant's decision to waive counsel is an intentional relinquishment or abandonment of a known right or privilege and that the record will so demonstrate," *id.* at 133.

The requirement that a waiver be "intentional" "refers to a defendant's 'intent' to waive the right." *Id.* at 132 n 8. Because courts are reluctant to find that a defendant has waived a fundamental constitutional right, "a valid waiver will not be presumed from a silent record." *Id.* at 131-32.

To make a knowing waiver, a defendant must know of his right to counsel, and, if the defendant is indigent, he must also know of his right to court-appointed counsel. *Id.* When determining whether a defendant's waiver is knowing, a trial court "should focus on what *the defendant* knows and understands." *Id.* at 132 (emphasis in original). A defendant must know and understand his options regarding representation. *See Langley III*, 351 Or at 673-74 (holding that the trial court erred by forcing the defendant to choose between self-representation and representation by current counsel, where the court had failed to first determine whether the defendant's complaints about counsel were valid).

A defendant may waive his right to counsel expressly through words or impliedly through conduct, including misconduct in the attorney-client relationship. *Id.* at 669. In most cases, a defendant's complaints about appointed counsel or motions for substitute counsel will not amount to waiver by misconduct because defendants often move for substitute counsel "without the benefit of legal training and without the assistance of a lawyer[,] and the fact that such submissions lack merit will not evidence a knowing and intentional waiver of counsel." *Id.* at 672 n 13. In addition, before a trial court can conclude that a defendant has waived his right to counsel through misconduct, the defendant must have received "an advance warning that a repetition of behavior that amounts to misconduct will result in the defendant having to proceed *pro se*." *Id.* at 670. Such a warning "is necessary to alert the defendant to the fact that a repetition of demonstrated misconduct may result in a waiver of

the right to counsel, rather than some other consequence."
*Id.*[2]

    In this case, there were three motions involving
the representation of defendant that were pending before
the trial court at the same time: (1) defendant had moved
for substitute counsel on the ground that Lee-Mandlin was
not providing adequate representation; (2) Lee-Mandlin had
moved to withdraw on the ground that, under the Rules
of Professional Conduct, she could not continue to repre-
sent defendant; and (3) the prosecutor had asserted that
defendant had waived his right to counsel through miscon-
duct and moved that, if the court granted Lee-Mandlin's
motion to withdraw, defendant should be forced to represent
himself.

    Notably, neither defendant nor Lee-Mandlin had
indicated that defendant wanted to waive his right to coun-
sel. Defendant had not asked to represent himself; he had
moved for substitute counsel, telling the court, "I need new
counsel." Lee-Mandlin had moved to withdraw because she
believed she had a conflict, not because defendant wanted to
proceed without counsel. The prosecutor was the only per-
son who suggested that defendant had waived his right to
counsel, and his suggestion was not based on an assertion
that defendant wanted to represent himself; instead, it was
based on an assertion that defendant had waived his right
to counsel through misconduct.

---

[2] We note that other jurisdictions have recognized both "waiver" of the right
to counsel by conduct and "forfeiture" of that right by conduct, and distinguished
between the two. *See, e.g.*, *State v. Nisbet*, 134 A3d 840, 853-54 (Me 2016) (dis-
tinguishing "waiver by conduct," which must be intentional and knowing, from
"forfeiture," which is an "extreme sanction" resulting from "willful and egregious
conduct that undermines or exploits the right to counsel with substantial detri-
ment to the judicial process, and where there is no meaningful available alterna-
tive" (internal quotation marks and citation omitted)). Those jurisdictions have
held that forfeiture of the right to counsel may result from a defendant "assault-
ing his attorney or engaging in abusive or threatening conduct toward counsel."
*Id.* at 853 (collecting state and federal cases so holding). *See also State v. Krause*,
817 NW2d 136, 148-49 (Minn 2012) (noting that forfeiture "results in the loss of
the right to counsel regardless of the defendant's knowledge of either the conse-
quences of his actions or the dangers of self-representation" and that forfeiture
is usually reserved for "severe misconduct, where other efforts to remedy the
situation have failed" (internal quotation marks and citation omitted)). In this
case, neither party claims that the trial court concluded that defendant forfeited
his right to counsel.

The trial court should have addressed the three motions separately because they presented different legal questions. *See State v. Crain*, 192 Or App 328, 333, 84 P3d 1092, *rev den*, 337 Or 556 (2004) (noting that a defendant's motion for substitute counsel and a lawyer's motion to withdraw involve "potentially overlapping, but analytically distinct, considerations"); *Langley III*, 351 Or at 666 (observing that a defense lawyer's motion to withdraw cannot, standing alone, "be treated as an implied waiver of a defendant's right to counsel"). Whether defendant was entitled to prevail on his motion for substitute counsel depended on whether he had identified a "legitimate complaint" about his current counsel, that is, a complaint "based on an abridgement of [his] constitutional right to counsel." *State v. Langley*, 314 Or 247, 258, 839 P2d 692 (1992), *adh'd to on recons*, 318 Or 28, 861 P2d 1012 (1993) (*Langley I*). Whether the trial court should have granted Lee-Mandlin's motion to withdraw depended on whether "a bona fide conflict of interest" or other problem existed in the attorney-client relationship that prevented Lee-Mandlin from "participating effectively" in that relationship. *Langley III*, 351 Or at 669. And whether the prosecutor was correct that defendant had waived his right to counsel through misconduct depended on whether defendant had engaged in misconduct in the attorney-client relationship that "defeat[ed] the ability of counsel to carry out the representation function" and had done so after being warned that such misconduct could result in the defendant having to represent himself. *Id.* at 670.

Moreover, the trial court's ruling on each motion would have affected its rulings on the other motions. If the court had granted defendant's motion for substitute counsel, then defendant would have been entitled to replacement court-appointed counsel (unless he waived his right to court-appointed counsel) and, as a result, Lee-Mandlin's motion to withdraw would have been moot. Likewise, if the court had granted Lee-Mandlin's motion to withdraw, then defendant would have been entitled to replacement court-appointed counsel (again, unless he waived his right to court-appointed counsel) and, as a result, defendant's motion for substitute counsel would have been moot. But if, as the prosecutor argued, defendant had waived his right to counsel through

misconduct, the court would not have had to address either defendant's motion for substitute counsel or Lee-Mandlin's motion to withdraw.

Unfortunately, the trial court did not address any of the motions expressly. Consequently, the record is unclear regarding why the court allowed trial to proceed without court-appointed counsel for defendant. As recounted above, after the court asked defendant whether he wanted Lee-Mandlin to withdraw and defendant said that he did, the court proceeded as if defendant's only other options would be to represent himself or retain counsel. That is, the court proceeded as if defendant's only options were to continue with Lee-Mandlin as his court-appointed counsel or go without court-appointed counsel.

It is unclear why the trial court proceeded as if those were defendant's only options. Defendant argues that the trial court must have impliedly accepted the prosecutor's argument that he had waived his right to counsel by "making it impossible for Ms. Lee-Mandlin to continue her representation." Specifically, defendant argues that the trial court's actions, including requiring that defendant represent himself if he could not retain counsel overnight, indicate "that the court impliedly found that defendant had waived his right to counsel through misconduct." That, defendant contends, was error because defendant "did not engage in repeated misconduct in the attorney-client relationship," and, "[e]ven if he did, the trial court did not warn defendant that the continuation of misconduct would result in being forced to proceed *pro se*."

The state reads the record differently than defendant. Although the prosecutor argued that defendant had waived his right to counsel through misconduct, the state does not renew that argument on review, and it asserts that the trial court rejected that argument. Specifically, it asserts that "the trial court did not suggest that defendant had engaged in *any* misconduct, much less misconduct that required him to proceed *pro se*." (Emphasis in original.)

We need not resolve the parties' competing readings of the record because, even if defendant engaged in misconduct, that misconduct could not constitute an intentional

waiver of his right to court-appointed counsel under these circumstances, where the trial court had not warned defendant that such misconduct could result in him having to represent himself. *See Langley III*, 351 Or at 670 (setting forth the requirements for waiver by misconduct).

Because, as we have just explained, the trial court could not conclude that defendant waived his right to court-appointed counsel through misconduct, the court could have permitted defendant to represent himself only if it could conclude that defendant had waived his right through an express waiver. But, given the way that the court handled the motions, it could not.

It is possible that, when the trial court asked defendant whether he wanted Lee-Mandlin to withdraw and defendant answered that he did, the court believed that defendant's answer constituted a waiver of his right to court-appointed counsel. If so, the court erred. When the court asked defendant whether he wanted Lee-Mandlin to withdraw, the court had not expressly ruled on Lee-Mandlin's motion to withdraw, and the court's question appeared to be seeking defendant's position on that motion. That is significant because defendant could have wanted the court to grant Lee-Mandlin's motion without wanting to waive his right to court-appointed counsel. Again, Lee-Mandlin moved to withdraw because of an asserted conflict. So, when the court asked defendant whether he wanted Lee-Mandlin to withdraw, defendant could reasonably and sincerely say that he did—that is, he could support Lee-Mandlin's motion— without intending to waive his right to court-appointed counsel. In short, he could want Lee-Mandlin to withdraw and want replacement counsel.

Indeed, that appears to have been the case. After the trial court asked defendant whether he wanted Lee-Mandlin to withdraw and if he was prepared to represent himself, defendant said, "I think I can represent myself if I can cross-examine my alleged victim and my witnesses, myself. Yes, I will be ready to represent myself. *But I also need an attorney or you can provide me with one.* But I'm ready." (Emphasis added.) Thus, even after the court asked defendant whether he wanted Lee-Mandlin to withdraw

and defendant said that he did, defendant believed that he needed a lawyer and that the court could provide him with one.

Consequently, we conclude that, in the context of the multiple pending motions, the trial court's question to defendant about whether he wanted Lee-Mandlin to withdraw was too ambiguous for defendant's answer to constitute an intentional relinquishment of his right to court-appointed counsel. Moreover, defendant's later statements show that he did not intend his answer to constitute such a relinquishment.

Alternatively, it is possible that the trial court believed that defendant waived his right to court-appointed counsel when, at the end of the court's questioning, defendant agreed that, if the court granted him a continuance, he would either retain counsel overnight or represent himself. But if so, the court erred. The court's questioning put defendant in the position of either continuing with Lee-Mandlin or going without court-appointed counsel. But if—as its questions to defendant indicated—the court had not yet ruled on Lee-Mandlin's motion, then it was possible that defendant had a different option: to proceed with replacement counsel. That is because, if the court determined that Lee-Mandlin had a conflict that prevented her from being able to provide constitutionally adequate representation to defendant, then the court would have had to appoint replacement counsel. So, until the court ruled on Lee-Mandlin's motion, the court could not proceed as if defendant's only options were to continue with Lee-Mandlin or go without court-appointed counsel. Essentially, the court put defendant in the position of choosing between being represented by court-appointed counsel with an unresolved conflict claim and representing himself. That was impermissible. Defendant's choice between those options does not constitute an intentional and knowing waiver of his right to court-appointed counsel. *See Langley III*, 351 Or at 673-74.[3]

---

[3] To be clear, we are not saying that the trial court erred in asking defendant whether he wanted Lee-Mandlin to withdraw. What we are saying is that, until the court ruled on Lee-Mandlin's motion to withdraw, it could not proceed as if defendant's only options were to continue with Lee-Mandlin or to go without court-appointed counsel.

A final possibility is that the trial court had determined that neither defendant's motion for substitute counsel nor Lee-Mandlin's motion to withdraw were well-founded, and, therefore, Lee-Mandlin could continue to represent defendant, so defendant's only options were either to proceed with her or to proceed without court-appointed counsel. But, if the court had done so, that would not have been clear to defendant, especially because the trial court appeared to be asking defendant for his position on Lee-Mandlin's motion. So, at a minimum, if the court had determined that it would not grant Lee-Mandlin's motion, it needed to inform defendant of its decision because, as far as anyone could tell, the court was asking defendant to choose between court-appointed counsel with an unresolved conflict claim and proceeding without court-appointed counsel.[4]

To summarize, the record is not clear as to why the trial court allowed the trial to proceed without counsel for defendant. But, on the record before it, the court could not conclude that defendant waived his right to counsel, either impliedly or expressly. It could not conclude that defendant had impliedly waived his right to counsel through misconduct because, even assuming defendant had engaged in misconduct, the court had not warned defendant that such misconduct could result in the loss of counsel. And it could not conclude that defendant had expressly waived his right to court-appointed counsel, either by stating that he wanted Lee-Mandlin to withdraw, or by ultimately agreeing that he would retain counsel overnight or represent himself. First, given the pending motions and the court's ambiguous question, defendant's statement that he wanted Lee-Mandlin to withdraw could not constitute an intentional waiver. Second, defendant's ultimate agreement to either retain counsel or represent himself was the result of a choice made when it

_____

[4] The state suggests yet another possibility. It asserts that Lee-Mandlin remained as appointed counsel until the following morning and that the trial court did not proceed as if defendant waived his right to counsel until that point. The record does not support the state's assertion. The court's journal entry for the day Lee-Mandlin moved to withdraw states, "Defense counsel's oral motion to withdraw is GRANTED. *** If Defendant has failed to obtain new counsel by the morning, Defendant will represent himself." Journal Entry - Trial, Day 2, Entered Mar 28, 2018, *State v. Stanton* (17CR17894). The following day, Lee-Mandlin filed a written motion to withdraw, and the court granted that motion before the trial resumed.

appeared that the court had not addressed Lee-Mandlin's asserted conflict, and such a choice cannot constitute an intentional and knowing waiver.

Because the record does not establish that defendant made an intentional and knowing waiver of his right to counsel, and because we cannot determine what the outcome of the case would have been had defendant been represented by counsel, we must remand this case for a new trial. *See State v. Cole*, 323 Or 30, 36-37, 912 P2d 907 (1996) (concluding that the trial court's failure to obtain a valid waiver of counsel before allowing the defendant to proceed *pro se* at a suppression hearing was prejudicial and not harmless because this court was "unable to determine the outcome of such a hearing" had it been conducted with the assistance of defense counsel).[5]

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

---

[5] Because we must remand this case for a new trial based on defendant's Article I, section 11, claim, we do not address defendant's other claims, which are that the trial court violated his right to counsel under the Sixth Amendment to the United States Constitution by compelling him to represent himself, and that the court did not properly respond to his motion for substitution of counsel.